UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN EDWARD HUGHES,

                                    Plaintiff,

        v.                                                          **DECISION AND ORDER**
                                                                    15-CV-181S
CAROLYN W. COLVIN, *Acting*
*Commissioner of Social Security*,

                                    Defendant.

1.        Plaintiff Brian Edward Hughes challenges an Administrative Law Judge's ("ALJ") determination that he was not disabled within the meaning of the Social Security Act ("the Act") for a period from October 12, 2012, through June 20, 2013.   Plaintiff alleges that he has been disabled since October 12, 2012, due to depression, anxiety, migraines, and bipolar disorder.   He therefore asserts that he is entitled to payment of disability benefits under the Act.

2.        Plaintiff filed an application for disability insurance benefits on March 4, 2014, which the Commissioner denied on April 25, 2014.   On April 30, 2014, Plaintiff requested a hearing before an ALJ.   On June 6, 2014, ALJ William M. Weir conducted a hearing at which Plaintiff, a vocational expert, and Plaintiff's mother appeared and testified.   Plaintiff was represented by counsel.   At the time of the hearing, Plaintiff was 48 years old, with a college education, and previous work experience at a bank and financial firm.   The ALJ considered the case de novo, and on September 18, 2014, issued a written decision granting Plaintiff's application for benefits as of July 1, 2013, but denying Plaintiff's application for benefits for the period from October 12, 2012, to

June 30, 2013.  The Appeals Council denied Plaintiff's request for review on February 4, 2015.   Plaintiff filed the current action on March 2, 2015, challenging the Commissioner's final decision.[1]

3.        On October 27, 2015, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure.  (Docket No. 8.)  On February 26, 2016, the Commissioner filed a Motion for Judgment on the Pleadings.  (Docket No. 14.)  For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case is remanded for further proceedings.

4.        A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.        "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[1] The AJL's September 18, 2014 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.        The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7.        This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the

> [Commissioner] presumes that a claimant who is afflicted
> with a "listed" impairment is unable to perform substantial
> gainful activity.  Assuming the claimant does not have a
> listed impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual functional
> capacity to perform his past work.  Finally, if the claimant is
> unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant
> could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in

original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §

404.1520.

    8.      Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is

divided into two parts.   First, the Commissioner must assess the claimant's job

qualifications by considering his physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42 U.S.C. §

423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.

Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

    9.      In this case, the ALJ made the following findings with regard to the five-

step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity

since October 12, 2012, the alleged onset date (R. at 19);[2] (2) Plaintiff's major

depressive disorder was a "severe" impairment within the meaning of the Act (R. at 19);

(3) before July 1, 2013 (the date Plaintiff became disabled), Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of

---

[2] Citations to the underlying administrative record are designated as "R."

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 20); (4) before July 1, 2013, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except no more than occasional interaction with co-workers, supervisors, and the general public (R. at 21); (5) before July 1, 2013, Plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 23); (6) as of July 1, 2013, Plaintiff's impairments have met or medically equaled the severity of one listed in C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 24).  Thus, Plaintiff was not under a disability, as defined by the Act, at any time before July 1, 2013.  (R. at 25).

10.     Plaintiff first contends that the ALJ erred by failing to properly evaluate his credibility, because he (1) failed to consider the reasons for Plaintiff's lack of medical treatment, and (2) failed to consider factors that enhance Plaintiff's credibility, such as his work history.   Upon review of the ALJ's credibility determination, this Court concludes that it is insufficiently supported and legally deficient.  Remand is therefore required.

11.     Credibility determinations are generally reserved to the Commissioner, not the reviewing court.  Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982) (similar).  The ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or

other symptoms alleged.  See Paries v. Colvin, No. 5:11–CV–0478 (LEK/ATB), 2013

WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing Snell, 177 F.3d at 135).

The Commissioner has established a two-step process to evaluate a claimant's

testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a
> medically determinable impairment which could reasonably
> be expected to produce the pain or symptoms alleged by the
> claimant.  Second, if the ALJ determines that the claimant is
> impaired, he then must evaluate the intensity, persistence,
> and limiting effects of the claimant's symptoms.  If the
> claimant's statements about his symptoms are not
> substantiated by objective medical evidence, the ALJ must
> make a finding as to the claimant's credibility.

Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); see 20 C.F.R. §§

404.1529, 416.929.[3]  In evaluating an individual's symptoms,

> adjudicators will not assess an individual's overall character
> or truthfulness in the manner typically used during an
> adversarial court litigation.  The focus of the evaluation of an
> individual's symptoms should not be to determine whether
> he or she is a truthful person.  Rather, . . . adjudicators will
> focus on whether the evidence establishes a medically
> determinable impairment that could reasonably be expected
> to produce the individual's symptoms and given the
> adjudicator's evaluation of the individual's symptoms,
> whether the intensity and persistence of the symptoms limit
> the individual's ability to perform work-related activities . . ."

SSR, 16-3P at *10.

---

[3] The Social Security Administration has updated its guidance on evaluating symptoms in disability claims. See SSR 16-3p, 2016 WL 1119029 (effective March 16, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character" and it also aims to "more closely follow our regulatory language regarding symptom evaluation."  Id. at *1.  Accordingly, the Commissioner will consider "all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably expected to produce those symptoms.  Id. at *1-2.  Moreover, the now rescinded SSR 96-7p and SSR 16-3p are not patently inconsistent as a comparison of the two reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms.  Compare SSR 16-3p with SSR 96-7p. Therefore, it is appropriate to evaluate Plaintiff's credibility in light of the new guidance the Administration has provided.

12.      "At the first step in the credibility analysis, 'plaintiff's allegations need not be substantiated by medical evidence, but simply consistent with it.  The entire purpose of section [ ] 404.1529 . . . is to provide a means for claimants to offer proof that is not wholly demonstrable by medical evidence."  Hogan v. Astrue, 491 F. Supp. 2d 347, 353 (W.D.N.Y. 2007) (emphasis in the original) (internal citations omitted); see also 20 C.F.R. § 404.1529(c) ("Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions . . . , which can be reasonably accepted as consistent with the objective medical evidence and other evidence, will be taken into account.")  "Only allegations beyond what is substantiated by medical evidence are subjected to a credibility analysis.  To require plaintiff to fully substantiate [his] symptoms would be both an abrogation of the regulations and against their stated purpose."  Hogan, 491 F. Supp. 2d at 353 (citing Castillo v. Apfel, No. 98 Civ. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999).

13.      If the ALJ determines that the claimant is impaired, he must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.  See Genier v. Astrue, 606 F.3d 46, 49 (E.D.N.Y. 2010); see also Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to

observe the witnesses' demeanor" while testifying.  Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).

14.     If a claimant's contentions are not supported by objective medical evidence, the ALJ must then consider the following factors to make a determination regarding the plaintiff's credibility: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.  See 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); SSR 16-3p, at *7; Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010); see also Murphy v. Barnhart, No. 00 Civ. 9621 (JSR)(FM), 2003 WL 470572, at *10–11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c)).   "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, Civ. No. 96–9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

15.     Here, at the first step of the credibility analysis, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (R. at 21.)  But at the second step, the ALJ found that "the

claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to July 1, 2013, for the reasons explained in this decision." (R. at 21.)

This adverse credibility finding is principally driven by the ALJ's finding that Plaintiff spent whatever resources he had on marijuana, rather than treatment. (R. at 21.) The ALJ explained as follows:

> Although the claimant reported he had no resources for care, I note he was using marijuana daily—which was not provided to him at no cost—to the point where his provisional diagnosis from ECMC in July 2013 was "[rule out] substance induced mood disorder." There is no evidence he sought free or low-cost care (such as he eventually did at ECMC) during this period. He clearly does much better on psychiatric prescriptions than on marijuana, though there is no evidence he expended energy obtaining the former when the latter would have been more beneficial.

(R. at 21-22.)

16.     The ALJ's credibility analysis is both unsupported by substantive evidence and legally deficient. To begin, the ALJ's conclusion that Plaintiff spent his resources on marijuana instead of treatment is unsupported by substantial evidence for two reasons. First, contrary to the ALJ's suggestion, the undisputed evidence in the record supports a finding that Plaintiff had little to no resources of his own during the relevant time period between October 2012 and July 2013. For example, Plaintiff testified that he ran out of money in Fall 2012 (R. at 37); that his house was in foreclosure (R. at 39); that his heat, electricity, and water were shut off or in danger of being shut off (R. at 37-38, 48, 49); that he received public assistance, including food stamps and HEAP benefits (R. at 39, 48); and that his friends and family were bringing him food and sometimes giving him money (R. at 37-39). And Plaintiff's mother, Joan Blachura,

testified consistently with Plaintiff, particularly that Plaintiff's utilities were shut off; that he could not pay his bills; that she brought him food; and that she gave him money.  (R. at 63, 64.)   Thus, the ALJ's finding that Plaintiff had financial resources of any significance, including of sufficient amount to support a daily marijuana habit, is not supported by substantial evidence.   Rather, the available evidence in the record compels the opposite conclusion:   that Plaintiff's financial state was dire between October 2012 and July 2013.

17.       Second, the ALJ's factual finding that Plaintiff used marijuana daily between October 2012 and July 2013 is also unsupported by substantial evidence. Evidence of Plaintiff's relevant marijuana use comes from the Erie County Medical Center admission records from July 1, 2013, when Plaintiff voluntarily sought psychiatric treatment there.  At that time, Plaintiff reported that "he smoked marijuana 3 weeks ago, prior to this he used marijuana 1.5 years ago . . . At that point he states that he was using marijuana everyday [sic]."  (R. at 279.)  It appears that the ALJ misread this entry. Rather than *daily* use within the relevant time period, this entry indicates that Plaintiff used marijuana only *once* during the relevant time period, on or about June 10, 2013 (three weeks before Plaintiff sought treatment at ECMC).  Before that, it had been 1.5 years since Plaintiff used marijuana daily, or since January 2012, which is outside the relevant time period.  Thus, there is no evidentiary basis upon which to conclude that Plaintiff was using marijuana daily within the relevant time period.

18.       These factual errors are compounded by two legal errors.  First, the ALJ faulted Plaintiff for not seeking free or low-cost health care between October 2012 and July 2013, but did not consider or explain the role that Plaintiff's mental impairments

10

may have played in Plaintiff not seeking treatment.  <u>See</u> SSR 96-7p; <u>Day v. Astrue</u>, No. 07 Civ. 157 (RJD), 2008 WL 63285, at *5 n. 7 (E.D.N.Y. Jan. 3, 2008) (noting that "a lack of treatment [should not be used] to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking [treatment]") (quotation and citation omitted).  The ALJ also did not adequately consider Plaintiff's lack of health insurance and dire finances as explanations for his lack of treatment. Consideration of these points is especially relevant because Plaintiff has a history of seeking treatment, even to the point of draining his cash reserves and retirement accounts when his health insurance ran out.  (R. at 37.)

19.     Second, the ALJ failed to consider and discuss Plaintiff's significant employment history as part of his credibility determination.  "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."  <u>Rivera v. Schweiker</u>, 717 F.2d 719, 725 (2d Cir. 1983) (citing <u>Singletary v. Sec'y of Health, Educ. and Welfare</u>, 623 F.2d 217, 219 (2d Cir. 1980)); <u>see also</u> <u>Maggio v. Heckler</u>, 588 F. Supp. 1243, 1246 (W.D.N.Y. 1984); <u>Patterson v. Chater</u>, 978 F. Supp. 514, 519 (S.D.N.Y. 1997); <u>Nelson v. Barnhart</u>, No. 01-Civ-3671, 2003 WL 1872711, at *7 (S.D.N.Y. April 10, 2003).  This is because a claimant with an established history of employment is unlikely to be "feigning disability."  <u>Patterson</u>, 978 F. Supp. at 519.  As the courts in this circuit have recognized, the failure to consider a claimant's work history in an evaluation of his or her credibility is "'contrary' to the law in this circuit and the SSA's rulings."  <u>Pena v. Barnhart</u>, No. 01 Civ. 502, 2002 WL

31487903, at *13 (S.D.N.Y. Oct. 29, 2002) (quoting <u>Montes-Ruiz v. Charter</u>, 129 F.3d 114 (Table) (2d Cir. 1997)).

Here, Plaintiff has a lengthy and good work history.  He has an accounting degree and worked for 17 years at HSBC bank, achieving the rank of Manager of Data and Analytics.  (R. at 35.)  He also spent one year at Arbor Management, a financial firm.  (R. at 35.)  In light of the fact that Plaintiff was only about 45 years old at the time he stopped working, an 18-year work history is lengthy and significant.

Based on this work history, the ALJ was required to afford "substantial credibility" to Plaintiff's claim that he is unable to work because of his disability or specifically state in his decision why Plaintiff was not credible despite his work history.  <u>Rivera</u>, 717 F.2d at 725.  But the ALJ neither discussed Plaintiff's work history, nor indicated what weight, if any, he afforded it.

Due to these several errors, this Court finds that the ALJ's credibility finding does not comply with the governing case law and cannot be sustained.  Remand is therefore required.

20.     In addition to challenging the ALJ's credibility determination, Plaintiff contends that the ALJ also erred by (1) failing to properly evaluate and weigh the opinion of his therapist, a licensed clinical social worker, (2) failing to use a medical expert to determine the disability onset date, and (3) failing to consider Plaintiff's bipolar and anxiety disorders as severe impairments.  The ALJ should also evaluate and, if appropriate, address these points of error on remand.

21.     After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with

this decision.   Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.


Dated:   March 22, 2017
          Buffalo, New York

                                        /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                     United States District Judge